[No. 1916. Decided January 3, 1896.]

CHARLES E. RUSSELL, *Respondent*, v. ELLA L. GUPTILL, *Appellant.*

SCHOOLS — AUTHORITY OF WOMEN TO HOLD OFFICE OF COUNTY SUPERINTENDENT.

Women are authorized to hold the office of county superintendent of schools in this state, under a statute establishing a general uniform system of schools (Laws 1889–90, p. 348), by the implied authority conferred by § 78 of the act, which provides that whenever the

words "he" or "his" occur in the act, referring to county super-
intendents or other school officers, it shall be understood to mean
also "she" or "her."

Appeal from Superior Court, Clallam County—
Hon. JAMES G. MCCLINTON, Judge. Reversed.

*Trumbull & Trumbull*, and *Louis Williams*, for ap-
pellant.
*George C. Hatch*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—This is an appeal from the judgment
of the superior court of Clallam county annulling and
setting aside the election of the appellant to the office
of superintendent of common schools for said county.
There is no dispute as to the facts, and the sole ques-
tion to be determined is whether the appellant, being
a woman, is eligible to the office to which, it is ad-
mitted, she was duly and regularly elected. It is con-
ceded by respondent that the state constitution does
not prohibit females from holding the office of county
superintendent of schools, and that the legislature
possesses the power to confer the right to hold such
office upon a woman. His contention is that prior to
the election of appellant, there was no law in this
state conferring this right upon her, and that the
judgment of the court below should therefore be
affirmed. The legislature has not prescribed the quali-
fications of county superintendents, but it is claimed
by respondent that § 3050 of the Code of 1881, which
he insists is till in force, expressly precludes women
from holding any office whatever. That section pro-
vides that:

"All American male citizens, above the age of twen-
ty-one years, . . . and none other shall be entitled
to hold office or vote at any election in this territory."

The fact is, however, that this section is, for the most part, if not altogether, superseded by the provisions of the constitution, except possibly the provision concerning the election to office of persons belonging to the army or navy. See Constitution, art. 6, §§ 1 to 4 inclusive, and art. 27, § 2.

But, if that were not so, the provisions therein contained would not, in any way, affect any other provisions the legislature may have made as to what persons may or may not be eligible to the particular office in question.

It being confessedly within the province of the legislature to provide that a person of either sex may hold the office of county superintendent, let us see what they have said upon the subject. The first legislature passed a comprehensive act establishing a general, uniform system of common schools, which, among other things, provides for the election in each county of the state, of a superintendent of schools, and prescribes his duties. Laws 1889–90, p. 348. Section 10 of that act, being § 775, Gen. Stat., reads as follows:

"A county superintendent of common schools shall be elected in each county of the state at each general election whose term of office shall begin on the second Monday in January next succeeding his election, and continue for two years, and until his successor is elected and qualified. He shall take the oath or affirmation of office, and shall give an official bond in a sum to be fixed by the board of county commissioners. He may, at his own cost, appoint a deputy, who shall qualify in the same manner as the county superintendent, and perform all the duties of the office, subject, however, to revision by the county superintendent. The county commissioners of each county shall fill any vacancy that may occur in the office of county superintendent until the next general election."

It will be observed that the legislature in this sec-

tion used the pronouns "he" and "his" in speaking of the term of office and of the official oath and bond of the county superintendent. These words imply the masculine gender, and it is nowhere in the act, or elsewhere, provided expressly that females may hold this office, but that they may, we think, must necessarily be implied from the language used in § 78 of the same act (Gen. Stat., § 856), which is:

"Whenever the word 'he' or 'his' occurs in this act, referring to either the members of the board of education, county superintendents, city superintendents, teachers, or other school officers, it shall be understood to mean also 'she' or 'her.'"

It is often necessary for the courts to resort to artificial rules of construction in order to arrive at the meaning of the legislature, but where the legislature itself puts a construction upon an act, by a provision embodied therein, such construction is binding upon the courts, although the latter, without such a direction, would have understood the language to mean something different. Endlich, Statutes, § 365; Sutherland, Statutory Construction, §§ 229, 231; *Byrd v. State*, 57 Miss. 243 (34 Am. Rep. 440); *Herold v. State*, 21 Neb. 50 (31 N. W. 258).

Now, if the legislature when they enacted section 78 did not contemplate that women might be elected to the office of county superintendent, it seems clear that the language used is entirely without force or meaning. It was idle and senseless for them to say "she shall take an oath of office and give an official bond" if they did not understand, and mean to be understood, that female citizens might hold the office of which they were speaking. It is the duty of the courts ordinarily to give full force and effect to every word of a statute, rather than to attribute to the legis-

lature either folly or ignorance of the words they employ.

There being in this state, therefore, no constitutional or statutory disqualification of females to hold the office of county superintendent of schools, and the legislature having, by clear implication, recognized the right, our conclusion is that the office may legally be held by a woman who is competent to discharge the duties pertaining thereto. For a more full and complete discussion of this question, see *Wright v. Noell*, 16 Kan. 601; Opinion of the Judges, 115 Mass. 602; *Huff v. Cook*, 44 Iowa, 639.

The judgment is reversed and the cause remanded to the superior court with directions to dismiss the proceeding.

Hoyt, C. J., and Dunbar, Gordon and Scott, JJ., concur.